STATE OF CONNECTICUT *v.* IRVIN BROWN

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and BARBER, Js.

Argued October 9—decision released December 9, 1975

*John R. Williams,* special public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

BARBER, J. The defendant was convicted, on a trial to a jury, of three counts of the sale of heroin in violation of § 19-480 (a) of the General Statutes. On appeal, four issues covered by the assignment of errors are being pursued. Enumerated in the order in which we shall discuss them, they are: (1) whether the state proved the defendant guilty beyond a reasonable doubt; (2) whether the court erred in denying the defendant's challenge to the jury array; (3) whether the court erred in admitting certain evidence tending to show the commission of other crimes and in denying the defendant's motion for a mistrial; and (4) whether the court erred in not charging the jury on the law relating to the failure of a party to produce certain witnesses.

I

We first consider the defendant's claim that the state did not prove its case beyond a reasonable doubt. The assignment of errors attacks the denials of the defendant's motion for a directed verdict and his motion to set aside the verdict. According to our appellate rules in effect on the date when the assignment of errors was filed, such claims are tested by the summary of evidence printed in the appendices to the briefs. *State* v. *Hart,* 169 Conn. 428, 430, 363 A.2d 80; *State* v. *Gosselin,* 169 Conn. 377, 379, 363 A.2d 100. From this evidence the jury could have reasonably found the following: On March 18, 1970, Detective Daniel F. Harvey, an undercover agent of the West Haven police department, met the defendant, to whom he had been introduced by an informant, and had a conversation with him concerning narcotics. The defendant told Harvey to meet him at the corner of Davenport and Vernon Streets in New Haven.

At that location the defendant gave Harvey what was represented to be a "half-load" (15 bags) of heroin for forty-five dollars. On March 19, 1970, Detective Harvey met with an individual known to him as Johnny Robinson, and drove with him to Vernon Street in New Haven, where Harvey saw the defendant. Harvey gave Robinson fifty dollars and Robinson walked to where the defendant was standing and was observed in conversation with the defendant. Robinson returned and gave Harvey fourteen glassine bags containing a white powdery substance. On March 27, 1970, Detective Harvey observed the defendant in a vehicle on Kimberly Avenue, called to him, and told him that he was interested in purchasing heroin. Detective Harvey was directed to accompany the defendant to a house, where Harvey waited in a hallway until the defendant returned and handed him a "half-load" of heroin for the agreed upon price of fifty-five dollars. The substances purchased on each occasion were analyzed at the state toxicological laboratory and each was found to contain heroin.

The defendant makes no claim that the evidence does not support the verdict on the first count of the information, but claims that the evidence on the second count was circumstantial and that the evidence adduced by the state on the third count contains contradictions. It is the province of the jury to draw reasonable and logical inferences from facts proved. *State* v. *Williams,* 169 Conn. 322, 336, 363 A.2d 72. There is no distinction between direct and circumstantial evidence as far as probative force is concerned; *State* v. *Cari,* 163 Conn. 174, 179, 303 A.2d 7; and the evidence must be given a construction most favorable to sustaining the jury's verdict. *State* v. *Malley,* 167 Conn.

379, 381, 355 A.2d 292. Although the defendant claims contradictions in the evidence produced by the state to support the verdict on the third count his appendix does not support such a claim. Furthermore, it is the duty of the state to ensure that all evidence tending to aid in ascertaining the truth be laid before the court, even though such evidence is not consistent with the prosecution's contention that the accused is guilty. *State* v. *Mitchell,* 169 Conn. 161, 166, 362 A.2d 808. There is ample evidence summarized in the appendices to support the verdicts on each of the three counts.

## II

In his challenge to the jury array and motion to dismiss the jury panel, the defendant challenged the constitutional validity of the Connecticut jury selection statutes, and he has pursued this claim on appeal. He contends that the statutes set impermissibly vague qualifications for prospective jurors (§ 51-217); exclude felons (§§ 51-217, 9-46); exempt doctors, lawyers, and all persons not registered voters from jury service (§§ 51-217, 51-218, 51-221); and discriminate against women (§ 51-218). As a result of these alleged defects, the defendant argues, the makeup of the jury which convicted him did not comply with the standards set by the sixth amendment of the United States constitution, as applied to the states through the fourteenth amendment.

The standard by which a jury selection system must be judged is whether the juries selected as a result of that system constitute "a fair cross section of the community." *Taylor* v. *Louisiana,* 419 U.S. 522, 527, 95 S. Ct. 692, 42 L. Ed. 2d 690; *Thiel* v. *Southern Pacific Co.,* 328 U.S. 217, 66 S. Ct. 984,

90 L. Ed. 1181; *State* v. *Hart,* 169 Conn. 428, 434, 363 A.2d 80; *State* v. *Townsend,* 167 Conn. 539, 545, 356 A.2d 125. The "fair cross section" standard is not inflexible, however. "The States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community." *Taylor* v. *Louisiana,* supra. The defendant has offered no evidence tending to show that the statutes in question generally result in jury arrays which do not conform to the "fair cross section" standard, nor has he even offered any evidence as to the makeup of the jury panel before which he was tried. Therefore, any claim by the defendant that the jury selection statutes result in their application in a purposeful discrimination against any cognizable group must fail. *Swain* v. *Alabama,* 380 U.S. 202, 205, 85 S. Ct. 824, 13 L. Ed. 2d 759; *State* v. *Hart,* supra.

The defendant claims, however, that the statutes in question are constitutionally invalid on their face, rather than simply as applied. He contends that the language of § 51-217, which requires that prospective jurors be "esteemed in their community as persons of good character, approved integrity, sound judgment and fair education," is impermissibly vague, affording ample opportunity for the discriminatory exclusion of various racial or economic groups. The contention is without merit. In ruling a similar Alabama statute constitutional on its face, the United States Supreme Court noted: "It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons

meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character." *Carter* v. *Jury Commission*, 396 U.S. 320, 332, 90 S. Ct. 518, 24 L. Ed. 2d 549. In footnote 31 in the *Carter* case (p. 333), § 51-217 is cited as one among many state statutes similar to the Alabama statute therein ruled valid.

Section 51-217 also limits prospective jurors to "electors," a limitation which the defendant attacks upon two grounds. First, since convicted felons forfeit their privileges as electors, § 9-46, the limitation in § 51-217 excludes convicted felons from jury service, thus depriving defendants of a jury panel truly representative of a "cross section of the community." The holding in *Carter* v. *Jury Commission*, supra, affirmed in *Taylor* v. *Louisiana*, supra, that the states remain free to limit prospective jurors to persons of good character, is dispositive of this first claim. Certainly an exclusion of felons is fully consistent with the "good character" and "approved integrity" standards of § 51-217. Furthermore, the disenfranchisement of convicted felons is not a denial of equal protection. *Richardson* v. *Ramirez*, 418 U.S. 24, 94 S. Ct. 2655, 41 L. Ed. 2d 551. Second, the defendant claims that limiting prospective jurors to electors excludes all persons not registered to vote, an impermissible form of discrimination. We have recently rejected an identical claim. *State* v. *Townsend*, 167 Conn. 539, 547, 356 A.2d 125; see also *United Staes* v. *Guzman*, 337 F. Sup. 140, 143 (S.D. N.Y.), aff'd, 468 F.2d 1245 (2d Cir.), cert. denied, 410 U.S. 937, 93 S. Ct. 1397, 35 L. Ed. 2d 602.

The defendant also claims that Connecticut jury arrays are not representative of the community because § 51-219 exempts "attorneys-at-law and physicians in active practice" from jury service. "[I]f the state law itself should exclude certain classes on the *bona fide* ground that it was for the good of the community that their regular work should not be interrupted, there is nothing in the Fourteenth Amendment to prevent it. The exemption of lawyers . . . [and] doctors . . . is of old standing and not uncommon in the United States. It could not be denied that the State properly could have excluded these classes had it seen fit, and that undeniable proposition ends the case." *Rawlins* v. *Georgia,* 201 U.S. 638, 640, 26 S. Ct. 560, 50 L. Ed. 899; see also *Taylor* v. *Louisiana,* supra, 534.

Finally, the defendant claims that § 51-218, as it read at the time of his trial, was unconstitutional because it provided exemptions from jury service for women who were trained nurses in active service; or nursing a sick member of the family; or caring for a child or children under sixteen years of age; while not providing similar exemptions for men in the same circumstances. Section 51-218 has since been repealed and replaced with a "sex neutral" statute; 1975 Public Acts, No. 75-264; so there is little to be gained by discussing its validity in general. It is sufficient for purposes of this case to note that the defendant has offered no evidence tending to show that § 51-218 resulted in his case in a jury array that was other than a "fair cross section of the community."

## III

The defendant has alleged error in the admission of certain testimony which tended to prove

the commission of prior crimes. The state called Dennis Karjanis, the informant who had introduced Detective Harvey to the defendant, and who was claimed to have witnessed the sales of March 18 and 19. On direct examination, Karjanis was asked how long he had known the defendant and he replied, "About six months." The next question was, "And on what basis?" The defendant objected to the question and the state claimed it, stating, "It goes to identity." The defendant then asked that the jury be excused and in their absence argued that it was a reasonable assumption that the probable answer was that the witness knew the defendant as a drug seller, which answer would be irrelevant, immaterial, and "highly prejudicial." The state claimed the question as "preliminary" in that it showed how Karjanis came to be an informant, his basis for knowing the accused, and whether he gave any information to the defendant. The defendant made no request for a preliminary examination of Karjanis in the absence of the jury. The court overruled the objection and recalled the jury. Karjanis then testified that he had known the defendant to be a drug seller and had purchased heroin in "half-load" quantities from the defendant on occasions prior to those charged in the information.

The testimony of Karjanis concerning his past purchases of heroin from the defendant clearly constituted evidence of prior criminal behavior on the part of the defendant. This court has long recognized the danger of prejudice against the defendant which may result from the admission of such evidence. *State* v. *Gilligan,* 92 Conn. 526, 530, 103 A. 649. "As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is

guilty of the crime charged against him." *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368, quoting from *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399. Such evidence is admissible for a variety of other purposes, however, such as "when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive, a system of criminal activity, or when the defendant has raised the issue of his character, or when the defendant has testified and the State seeks to impeach his credibility." *Spencer* v. *Texas,* 385 U.S. 554, 560, 87 S. Ct. 648, 17 L. Ed. 2d 606; see *State* v. *Holliday,* supra; 1 Wigmore, Evidence (3d Ed.) §§ 215–218; McCormick, Evidence (2d Ed.) § 190.

"That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material; *State* v. *Marshall,* 166 Conn. 593, 600, 353 A.2d 756; *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368; see *State* v. *Jenkins,* 158 Conn. 149, 152–53, 157, 256 A.2d 223; and if the trial judge determines in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency. *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199 [cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219]; *State* v. *Holliday,* supra, 173." *State* v. *Ralls,* 167 Conn. 408, 417, 356 A.2d 147. Karjanis' testimony that he had bought heroin from the defendant was material in showing that he usually purchased heroin in half-load quantities from the defendant and was his basis for being able to recognize the defendant. Any evidence materially bolstering his identification of the defendant would necessarily be of importance. *Robinson* v. *United States,* 459 F.2d 847, 857

(D.C. Cir.); see *State* v. *Towles*, 155 Conn. 516, 523, 235 A.2d 639. The admissibility of the evidence was, therefore, within the judicial discretion of the trial court. In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. *DiPalma* v. *Wiesen*, 163 Conn. 293, 298, 303 A.2d 709. Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. *Thomas* v. *Thomas*, 159 Conn. 477, 480, 271 A.2d 62; 1 Wharton, Criminal Evidence (13th Ed.) § 241. In balancing the grounds advanced by the state for the admission of the evidence against the grounds advanced by the defendant for excluding it, we cannot say that as a matter of law the court abused its discretion in allowing the question to be answered.

The finding discloses that there was evidence to prove, and the state claims to have proved, that Karjanis had previously testified falsely that no sale of heroin had taken place on March 27, 1970, and that Karjanis was given heroin in payment for such testimony at the first trial.

During his redirect examination of Karjanis, the state's attorney asked the following questions: "And whether or not it is a fact that at one time prior to your testifying in court the first time as to March 27, 1970, you tried to stop taking drugs and you only got on drugs after . . . [the defendant] gave them to you to testify for him?" The defendant immediately moved for a mistrial, which motion was denied, although the court "sustained the objection" to the question. (No objection had been made.) The jury were excused, and in their absence, the defendant argued for a mistrial. The

motion was denied, the jury were recalled, and, as appears in the transcript, the court gave curative instructions to the jury. The defendant has appealed the denial of his motion for a mistrial.

" 'The general principle is that a mistrial should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial. *Izzo* v. *Crowley,* 157 Conn. 561, 565, 254 A.2d 904; *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433.' " *State* v. *Grayton,* 163 Conn. 104, 112, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495. Although we agree that a state's attorney should scrupulously avoid questions of probable impropriety, we recognize that "the trial judge is the arbiter of the many circumstances which may arise during a trial." *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689. "The trial court has a wide discretion in passing on motions for mistrial." *State* v. *Savage,* 161 Conn. 445, 449, 290 A.2d 221. In light of the circumstances and the curative instruction given the jury, we cannot say that the trial court abused its discretion in denying the motion for mistrial.

## IV

The defendant filed a written request to charge the jury on the law relating to the failure of a party to produce witnesses. The request, without identifying any persons, recited that the state had failed to call certain witnesses. In argument to the jury, defense counsel stated that the two employees of the state department of health who had actually performed the analysis of the substances found to be heroin should have testified rather than Abraham

Stolman, the chief toxicologist of the state.[1] The state offered evidence and claimed to have proved that Stolman supervised and directed the two employees. The record does not show that a written report of the analysis was offered in evidence as permitted under the provisions of General Statutes § 19-483. See *State* v. *Addazio,* 169 Conn. 416, 421, 363 A.2d 153; *State* v. *Marsh,* 168 Conn. 520, 528, 362 A.2d 523; *State* v. *Johnson,* 166 Conn. 439, 444, 352 A.2d 294.

The failure of a party to produce as a witness one who is available and who naturally would be produced permits the inference that such witness, if called, would have exposed facts unfavorable to the party's cause. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598; *Ezzo* v. *Geremiah,* 107 Conn. 670, 677, 142 A. 461; 2 Wigmore, Evidence (3d Ed.) § 285; *Bell* v. *Bihary,* 168 Conn. 269, 271, 362 A.2d 963; see *State* v. *Annunziato,* 169 Conn. 517, 535, 363 A.2d 1011. To take advantage of this rule permitting an adverse inference, the party claiming the benefit must show that he is entitled to it. *Queen* v. *Gagliola,* 162 Conn. 164, 169, 292 A.2d 890.

---

[1] "I would say to you I don't think it is a major point in this case but I would say to you that the State hasn't actually . . . proved beyond a reasonable doubt that as to each and every one of those three samples of powder that it was heroin. And why do I say that? Because they bring in only one witness from the State Laboratory. I think that that is very interesting. Who is the person they bring in? The one person who is the head of the lab. Obviously, the person who is the busiest, the person who is presumably the highest paid, the person whose time is most valuable. . . . I think that the reason Dr. Stolman was brought in here . . . rather than those two women who presumably would know something is that they thought Dr. Stolman could 'snow' you. He has a string of degrees and a string of credits and books as long as your arm. He is, in fact, a respected scientist. Whereas, these other people just work for him."

In this case it appears from the record that both of the employees who participated in the analyses were still working in the state laboratory at the time of the trial and presumably were available to testify. We will therefore address ourselves to the second condition necessary for the rule to be operative, that is, whether these two employees working under the supervision of Stolman were witnesses whom the state would naturally be expected to produce. An inference is not raised by the bare fact that a particular person is not produced as a witness, but only when it would be natural for him to be produced if the facts known by him had been favorable. "A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." *Secondino* v. *New Haven Gas Co.,* supra, 675. When a witness is equally available to both parties no inference unfavorable to either may be drawn. *Turner* v. *Scanlon,* 146 Conn. 149, 161, 148 A.2d 334. It is plain that naturalness of production and materiality are not the same. *State* v. *Brown,* 163 Conn. 52, 58, 301 A.2d 547.

A possible witness whose testimony is for any reason comparatively unimportant, cumulative or inferior to what has been offered should be dispensed with on the general ground of expense and inconvenience, without anticipation that an inference may be invoked. 2 Wigmore, op. cit. § 287. In the absence of a special showing, there is nothing "peculiar or superior" about the testimony to be expected from analysts who participate in the analysis of substances under the direction of the chief

toxicologist at the state laboratory. *State* v. *Addazio,* supra, 423; *State* v. *Holloway,* 147 Conn. 22, 27–28, 156 A.2d 466, cert. denied, 362 U.S. 955, 80 S. Ct. 869, 4 L. Ed. 2d 872; General Statutes § 19-483. This is true even though the chief toxicologist may not recall all of the details of an analysis without consulting the records of the department. Moreover, the defendant's claim of proof includes no reference to the analysis of the substances obtained from the defendant. Although the defendant assigned error in admitting Stolman's testimony, he has not briefed that issue and it must be considered abandoned. *State* v. *Lockman,* 169 Conn. 116, 121, 362 A.2d 920; *State* v. *Marsh,* supra, 521; *State* v. *Lally,* 167 Conn. 601, 605, 356 A.2d 897. The argument of the defendant (the pertinent portion of which is set forth in footnote 1, supra) is couched in terms of reasonable doubt rather than asserting the right of the jury to draw an unfavorable inference. There is a distinction between such argument and the right to an instruction on the failure to call a witness. McCormick, Evidence (2d Ed.) § 272; see Alexander, "Presumptions: Their Use and Abuse," 17 Miss. L.J., 1, 14. Under the circumstances of this case the trial court did not err in not charging the jury as requested.

There is no error.

In this opinion the other judges concurred.