PAUL G. FONTAINE *v.* EUGENE COYLE ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued November 9, 1977—decision released January 24, 1978

*Ira B. Grudberg,* for the appellant (plaintiff).

*James F. Meenan,* assistant corporation counsel, with whom, on the brief, was *William J. Sullivan,* corporation counsel, for the appellees (defendants).

HOUSE, C. J.   This case arose from the circumstances surrounding the arrest of the plaintiff by two Waterbury police officers.   The plaintiff sought damages from the two officers and the city of Waterbury, claiming that the officers had negligently used excessive force in making the arrest, causing physical injury to the plaintiff.   The trial resulted in a verdict for the defendants and the plaintiff has appealed from the judgment and has assigned error in the court's denial of his motion to set aside the verdict.

The sole issue raised on the appeal concerns one portion of the court's charge to the jury, and reference to certain facts in the case is necessary to place that issue in context.   There was a conflict in the testimony, but there was evidence from which the jury could have found that prior to his arrest the plaintiff had been at a bar in Waterbury with William McNellis, Albert Langlais and Ronald Blake.   The four men left the bar to go to a restaurant in Waterville, Blake riding as a passenger in the plaintiff's car, and McNellis and Langlais following in another car.   En route to the restau-

rant, the plaintiff's car was pursued by the police, shots were fired and the car was stopped. The officers testified that the plaintiff was verbally abusive, shoved one of them, physically threatened and attacked them, and grabbed the gun of one of the officers. The officers also testified that, in the course of a struggle over the weapon, the plaintiff was struck on the head, but they denied kicking or otherwise striking the plaintiff. At the trial, Langlais testified about the incident. He supported the plaintiff's testimony about the plaintiff having been struck on the head and pummeled by the police officers, and he testified that when he and McNellis arrived on the scene McNellis went to help the plaintiff and he, being afraid, left in McNellis' car. The police officers testified that McNellis charged into them and a scuffle ensued at which time McNellis was also subdued and arrested. Neither Blake nor McNellis testified at the trial. The plaintiff testified that he had not seen Blake for approximately five years and had no idea where he was and that McNellis was out of the state. On cross-examination, the plaintiff admitted that he knew that McNellis was in the federal penitentiary in Atlanta, Georgia, and that he had visited McNellis there within the prior two weeks. It also appears that in answer to a motion for interrogatories filed by the defendants before the trial, William McNellis was listed by plaintiff's counsel as a witness for the plaintiff.

During the course of its lengthy charge, the court included what has come to be known as the "*Secondino* charge," so called because its use was discussed in the case of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598, and our many subsequent discussions of that charge. See,

for example, *Shea* v. *Tousignant,* 172 Conn. 54, 58, 372 A.2d 151; *Zack* v. *Guzauskas,* 171 Conn. 98, 102, 368 A.2d 193; *Maciejewska* v. *Lombard Bros., Inc.,* 171 Conn. 35, 43, 368 A.2d 206; *Doran* v. *Wolk,* 170 Conn. 226, 229, 365 A.2d 1190; *State* v. *Brown,* 169 Conn. 692, 704, 364 A.2d 186; *State* v. *Annunziato,* 169 Conn. 517, 536, 363 A.2d 1011; and *Bell* v. *Bihary,* 168 Conn. 269, 271, 362 A.2d 963.

Because the correctness of this portion of the charge in the circumstances of the case is the sole issue on the appeal, we quote it in full.[1] The plaintiff took exception to the charge as follows: "I would take exception to your Honor giving of the Secondino Charge concerning the witness McNellis who, testimony indicated, is in the state of Georgia in the Federal Penitentiary there. It is my claim that the possibility of spending large sums of money and going out of the state to take such a deposition is not equal to the term 'available' as set forth in the Secondino Charge and under those circumstances the jury should either have

[1] "Now, in the course of the argument of this case, there was some attention made to the fact that one Blake did not come here to testify; nor did one McNellis, William McNellis, come here to testify. It is true that where a party fails to call to the stand a witness who if so called could testify to any material fact, and where such witness would naturally be produced by such party, you are entitled to infer that had he testified that testimony would be unfavorable to the party failing to call him and to consider that fact in arriving at your decision. However, you are not required to draw that inference, but if you do, then the weight to be accorded to it is to be determined by you in the light of all the circumstances, including the nature, the materiality, and the importance of his testimony. You must, however, first determine two things. One, was that witness available? And two, was that witness one whom the party would naturally have produced to call him and put him upon the witness stand? Now I'm going to refer specifically to my recollection of the testimony. It is my recollection that Mr. Blake had been unavailable and nobody knows his whereabouts, and haven't for the last five years. However, it was indicated by the

been charged—it would be my claim that the charge should not have been given at all because the evidence showed that he was unavailable but at the very least the jury should have been given the right to find that his being in Georgia made him unavailable."

Assuming that, under the circumstances, the defendants were entitled to a *Secondino* charge, we conclude that there is, nevertheless, merit to the plaintiff's claim that the court erred in telling the jury that McNellis, "as far as this court is concerned, is available, not necessarily in person, but by deposition." It is true that the court thereafter instructed the jury that "if you believe that William McNellis was one who would naturally have been produced to testify in this particular case, and if you believe he was available by virtue of the testimony that has been brought out here," then they had a right to draw an inference that his testimony would have been unfavorable to the plaintiff. It is also probably true that it was the court's inten-

Plaintiff that he did know the whereabouts of William McNellis and in fact saw him two weeks prior to this trial in a Federal Penitentiary in Atlanta, Georgia. That witness, as far as this court is concerned, is available, not necessarily in person, but by deposition. So that if you believe that William McNellis was one who would naturally have been produced to testify in this particular case, and if you believe he was available by virtue of the testimony that has been brought out here, then of course you have a right to draw an inference from the fact that his testimony would have been unfavorable to the Plaintiff in this particular matter. Now, a witness who would naturally be produced by a party is one who is known to the party and who by reason of his relationship to that party or to the issues or both could reasonably be expected to have peculiar or superior information material to the case which if favorable the party would have produced. The failure of a party to call as a witness a person who is available and who does not stand in such relationship to the party in question or to the issues, that that party would naturally be expected to produce him or his testimony was favorable, affords no basis for an unfavorable inference."

tion merely to inform the jury that the fact of McNellis' imprisonment did not, as a matter of law, render him unavailable as a witness, since his testimony could have been presented by deposition even if he could not be personally present at the trial. Nevertheless, whether McNellis was an available witness and whether he was one whom the plaintiff would naturally have produced were questions of fact for the jury to determine as conditions precedent to drawing any adverse inference from his absence. His availability as a witness was a fact to be shown by the defendants as the parties to be benefited by the inference; *Maciejewska* v. *Lombard Bros., Inc.,* supra; *Doran* v. *Wolk,* supra, 229–30; and the question of his availability should have been left for the jury to decide without the court's observation that "as far as this court is concerned" McNellis was available.

Although this decision is dispositive of the merits of this appeal, the circumstances of this case prompt us to comment on the increasing frequency with which appeals involving the questionable use of the *Secondino* charge have come before us. The principles inherent in the charge are sound but it is not every case in which a possible witness is not presented that a charge on the adverse inference rule is justified or permissible. If the jurors find that the witness' testimony would not be material or substantial to the case, they are not permitted to draw an adverse inference from his absence from the trial. *Bell* v. *Bihary,* supra, 272. As we noted in *State* v. *Brown,* supra, 705: "A possible witness whose testimony is for any reason comparatively unimportant, cumulative or inferior to what has been offered should be dispensed with on the general ground of expense and inconvenience, without

anticipation that an inference may be invoked. 2 Wigmore . . . [Evidence (3d Ed.)] § 287." In the circumstances of that case, we added: "In the absence of a special showing, there is nothing 'peculiar or superior' about the testimony to be expected from analysts who participate in the analysis of substances under the direction of the chief toxicologist at the state laboratory." The latter comment was prompted by the court's observation in the *Secondino* case (p. 675) that "[a] witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." In the *Secondino* case, the uncalled possible witness was a medical specialist who, according to the plaintiff's claims of proof, had treated her for the injuries which she claimed to be her more serious ones. In that case, the court also gave other examples of possible witnesses having such a special relationship and "peculiar or superior information material to the case." See, e.g., *Ezzo* v. *Geremiah,* 107 Conn. 670, 676, 142 A. 461 (a defendant's son who was driving the defendant's automobile); *Dawson* v. *Davis,* 125 Conn. 330, 332, 5 A.2d 703 (a plaintiff's nephew who had charge of land involved in a dispute); *Lemmon* v. *Paterson Construction Co.,* 137 Conn. 158, 163, 75 A.2d 385 (a defendant's employee); and *Broderick* v. *Shea,* 143 Conn. 590, 593, 124 A.2d 229 (a plaintiff's husband). The court emphasized the importance of this special relationship by additionally stating (p. 676) the principle negatively: "The failure of a party to call as a witness a person who

is available to both parties and who does not stand in such a relationship to the party in question or to the issues that that party would naturally be expected to produce him if his testimony was favorable affords no basis for an unfavorable inference." Significantly, the court cited with approval the 1858 case of *Scovill* v. *Baldwin,* 27 Conn. 316, 317, in which this court stated: "The court ruled correctly also, that the defendant had no right to draw any inference against the plaintiff, because he had not produced one Butler as a witness in his favor. The circumstance that a particular person, who is equally within the control of both parties, is not called as a witness, is too often made the subject of comment before the jury. Such a fact lays no ground for any presumption against either party. If the witness could aid either party, such party would probably produce him. As he is not produced, the jury have no right to presume anything in respect to his knowledge of any facts in the case, because they are to try the case upon the facts shown in evidence, and upon them alone, without attempting to guess at what might be shown if particular persons were produced by the parties." To the same effect, see *State* v. *Rosa,* 170 Conn. 417, 431, 365 A.2d 1135; *State* v. *Brown,* 169 Conn. 692, 704–705, 364 A.2d 186; *Turner* v. *Scanlon,* 146 Conn. 149, 161, 148 A.2d 334; *Fierberg* v. *Whitcomb,* 119 Conn. 390, 397, 177 A. 135; *State* v. *Segar,* 96 Conn. 428, 439, 114 A. 389; *Cullum* v. *Colwell,* 85 Conn. 459, 466, 83 A. 695.

As we have observed, the principles underlying the adverse inference rule are sound and a charge on it may properly be given when a party claiming the benefit of the rule has shown that he is entitled to it, but, "[i]n order for a negative inference to

be permissible from the failure of a party to call a witness, all the requirements set forth in the *Secondino* and *Brown* cases must be complied with strictly because of the potentially critical effect of such an inference." *Bell* v. *Bihary,* 168 Conn. 269, 273–74, 362 A.2d 963.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.