EVELYN QUEEN *v.* NANCY GAGLIOLA ET AL.

HOUSE, C. J., THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued October 8, 1971—decided January 19, 1972

*William F. Gallagher,* with whom, on the brief, was *George L. Eastman,* for the appellant (named defendant).

*Andrew D. Sabetta,* for the appellee (plaintiff).

RYAN, J. This is a personal injury action brought by the plaintiff in four counts against Nancy Gagliola, Angelo A. Gagliola and the Helene Curtis Industries, Inc. The first count alleged that the defendants Gagliola were engaged in the business of hair styling and that the plaintiff suffered injuries as a result of their negligence in giving her a permanent wave. In the second count it was alleged that the defendant Helene Curtis Industries, Inc., negligently sold a bottle of lotion to the defendants Gagliola which was used by them in the hair treatment administered to the plaintiff; that the defendant Helene Curtis Industries, Inc., failed to warn, by appropriate label or otherwise, of the dangerous propensities of the lotion and that its negligence was the proximate cause of the plaintiff's injuries. The third count alleged breach of warranty by the defendant

Helene Curtis Industries, Inc. The fourth count was for breach of implied warranty by the defendants Gagliola.

The defendants Gagliola and Helene Curtis Industries denied the essential allegations of the complaint and filed special defenses alleging that any injury to the plaintiff was the sole result of the plaintiff's own individual allergic reaction and peculiar susceptibility to the permanent wave solution, and that the defendants had no knowledge or notice of such a condition and had no reason to foresee it. At the conclusion of the plaintiff's evidence the motion of the defendant Helene Curtis Industries for a directed verdict was granted. The action against the defendant Angelo A. Gagliola was withdrawn and the fourth count was dropped by the plaintiff. The jury returned a verdict against the defendant Nancy Gagliola on the first count. Her motion to set aside the verdict was denied and from the judgment rendered thereon she appealed to the Appellate Division of the Circuit Court, which affirmed the judgment. On the granting of certification, the named defendant appealed to this court.

The defendant's assignments of error are directed to the charge of the trial court. The plaintiff made the following claims of proof: On February 17, 1966, the plaintiff went to the Valley Academy of Beauty Culture in the city of Ansonia to have her hair styled in a permanent wave. The defendant Nancy Gagliola owned and operated the academy as a school, and, as part of the training program, students were permitted to give permanent waves to the public. On that day the plaintiff was given a hair wave known as the "Elegante Permanent" for which she paid $8.50. On prior occasions the plaintiff had received similar hair waves and suffered no

ill effects from them. The solution applied to the plaintiff's hair for the permanent wave was called "Elegante Permanente d'Italia," which was manufactured by Helene Curtis Industries and supplied by the manufacturer to the academy. Instructions for the giving of the permanent wave were printed on the box in which the solution was packaged and referred to more detailed directions known as Sue Cory instructions. These instructions were in the possession of the defendant. It was customary for students working at the academy to follow the instructions given to them by their instructor. The plaintiff asked that she be given the same kind of permanent wave she had the last time she was at the school. The wave was given to her by Sue Sayer, a high school student seventeen or eighteen years of age, and by another girl, not identified, of approximately the same age. The supervisor–teacher on duty at the time the plaintiff's hair was being treated did not supervise the students and was not present at any time while the students were actually treating the plaintiff's hair. The plaintiff's hair was saturated with the permanent lotion and the hair was wound on plastic curlers, each approximately one-quarter of an inch apart from the other. After the hair was set the timer was started, and about the time the timer went off, the plaintiff complained to Miss Sayer that her head was burning all over. The student checked her hair, told the plaintiff that it was not ready and reset the timer. Miss Sayer checked only one curl by unwinding it. This was the only "test curl" which was made. The instructions for the application of the solution were not followed by Miss Sayer in applying the lotion to the plaintiff's hair. While at home later that evening, the plaintiff noticed that

her hair was short in the back and that she could see her scalp. The next morning when she combed her hair, she noticed that hair had fallen out, the hair line had receded, the front right side of her hair was gone and there was a bald spot on the left frontal part of her head. The plaintiff had burning, sores and blisters on her scalp and on the back of the neck, and her hair continued to break close to the scalp for a period of four months thereafter. As a result of her injury, she has a small permanent scar on the back of her neck one centimeter long and one centimeter wide. The injuries sustained by the plaintiff were, with reasonable probability, due to the permanent wave treatment. On February 17, 1966, it was within the course of instruction for Miss Sayer and other students on duty to perform work on paying patrons.

The defendant assigns error in that portion of the charge which permitted the jury to infer from the defendant's failure to produce as witnesses Susan Sayer, the student beautician, and the unidentified student who assisted her, that their testimony would have been unfavorable to the defense. The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause. The party against whose cause an unfavorable inference is claimed, may, of course, offer evidence to explain the failure to produce the witness. There are two requirements for the operation of the rule: (1) The witness must be available; (2) he must be a witness whom the party would naturally produce. *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598. The defendant concedes that the two absent students are in the

category of witnesses who would naturally be produced by the defendant. She claims, however, that Susan Sayer and her associate were unavailable. The party claiming the benefit of the rule on the adverse inference must show that he is entitled to it. The only evidence as to availability was offered by the defendant to the effect that Miss Sayer was in Florida but could not be located and that the identity of the other student was unknown. There was no evidence that these witnesses were available and that it was within the defendant's power to produce them. *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* 156 Conn. 123, 130, 239 A.2d 519. The instruction to the jury was erroneous.

The defendant also assigns error in the court's charge on the doctrine of res ipsa loquitur. The basis of the exception taken by the defendant was that the court should not have instructed the jury on the doctrine because the defendant could not be charged with control of the particular product in question, inasmuch as it came in a sealed container directly from the manufacturer. The defendant claimed that she was not a chemist and that since there was a chemical possibility that there was a deleterious substance in the product it negatived the question of control over the product by her. Since our ruling on the misapplication by the trial court of the *Secondino* doctrine is dispositive of the case, there is no necessity for a determination of the question raised by the defendant. Since, however, a new trial is required we believe it is essential to observe that the case should not have been submitted to the jury on the doctrine of res ipsa loquitur. The plaintiff offered evidence that the supervisor-teacher on duty at the time the plaintiff's hair was being treated did not supervise the students and was not

present at any time while the students were actually treating her hair; that the "Elegante" solution comes in a box on which instructions for its application appear but these instructions were not followed by Miss Sayer in applying the lotion to the plaintiff's hair; that after the timer was set and started and about the time it went off, the plaintiff complained to Miss Sayer that her head was burning all over; that Miss Sayer made a test check of only one curl by unwinding it, told the plaintiff it was not ready and reset the timer; and that later the same evening the plaintiff noticed that her hair had fallen out, the hair line had receded and there was a bald spot on her head. As we said in *Ryan* v. *George L. Lilley Co.,* 121 Conn. 26, 31, 183 A. 2, on this state of the proof there was no occasion or necessity to explain to the jury the application of the doctrine of res ipsa loquitur. In other jurisdictions, various approaches to the problem are taken. See note, 33 A.L.R.2d 791; Prosser, Torts (3d Ed.), p. 231. The rule of the *Ryan* case has been followed in this state but has not been discussed by this court in later cases. At the present time there seems to be some confusion in the minds of trial judges. The meaning of the rule is clear. Where there is evidence of specific negligence on the part of the defendant which would support a finding by the jury that such negligence was a proximate cause of the plaintiff's injury, the jury should not be instructed on the doctrine of res ipsa loquitur.

The defendant also excepted to the charge of the court with reference to damages for a permanent scar. We need not discuss this assignment of error in detail beyond recalling what we said in a very recent case. "It was erroneous for the court to have allowed the jury to consider damages based on the

probable duration of the plaintiff's life without instructing the jury as to what that duration might be, on the basis of evidence offered at the trial or judicial notice of accepted mortality tables." *Acampora* v. *Ledewitz,* 159 Conn. 377, 385, 269 A.2d 288. This clearly indicated our hope and expectation that such situations be avoided by the use of mortality tables.

There is no merit in the remaining assignment of error and it does not require discussion.

There is error, the judgments of the trial court and the Appellate Division are set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.