Robert Rzucidlo *v.* Newtown Realty, Inc., et al.

Court of Common Pleas    Fairfield County    File No. 100747
AT Bridgeport

Memorandum filed February 5, 1974

*Brody & Brody,* of Bridgeport, for the plaintiff.

*Zeldes, Needle & Cooper,* of Bridgeport, for the defendants.

Levine, J. This is an application, for a prejudgment remedy, which seeks a real estate attachment.

## I

The writ alleges that the plaintiff was employed by the defendant Newtown Country Realty, Inc., hereinafter sometimes referred to as Realty, as a real estate salesman, on October 1, 1972; that on February 1, 1973, the defendant Country Homestead, Inc., hereinafter sometimes referred to as Homestead, listed certain property in Newtown for sale with Realty; and that through the plaintiff's efforts Mr. and Mrs. Polcyn purchased the property —together with the services of Homestead—to erect a home thereon, for the aggregate sum of $79,052.

The plaintiff therefore claims a commission of $2000, plus a bonus of $1000, as allegedly agreed, making a total claim of $3000.

The plaintiff was the sole witness at the hearing on his application. The defendants did not offer any witnesses or evidence. The president and chief executive officer of both defendant corporations was Mrs. Clara K. Miller.

The plaintiff testified that he showed numerous completed homes to the Polcyns, but that the homes were not satisfactory to the buyers. The Polcyns became interested in the possibility of constructing a new home. The plaintiff then showed them several unimproved lots. They finally selected and purchased a lot on Eden Hill Road. The Polcyns were introduced to Mrs. Miller, at or about this time.

The plaintiff claimed that just before he left for a vacation, in the latter part of February, or early in March, 1973, the Polcyns stated to him that they would purchase a lot from Homestead and use its services to construct a home thereon, if a satisfactory structure could be designed and built, and if the total price was less than $80,000. At that time, no plans had been drawn, and no specific agreement concerning price, times of performance, or the type of house to be built had been concluded between the defendants and the Polcyns.

The plaintiff communicated this offer to Mrs. Miller, and received a binder check for $1000 from the Polcyns.

After the plaintiff left for a vacation in Florida, Mrs. Miller negotiated further with the Polcyns. When the plaintiff returned, Mrs. Miller instructed him not to take any further action in connection with the sale to the Polcyns. Thereafter, Mrs. Miller was principally active in closing an agreement for the sale to the Polcyns.

The Polcyns ultimately purchased the lot from Homestead, and had a home erected thereon by Homestead. A sale of the premises to the Polcyns was closed on August 30, 1973, for a total price of $79,052.

At the present hearing, a signed statement of Mr. Polcyn was introduced by the plaintiff as an exhibit. The statement essentially confirmed the plaintiff's claims that he had exerted substantial efforts in showing a number of homes and sites to the Polcyns, and that he had introduced the Polcyns to Mrs. Miller.

The petition involves two basic issues: (1) the rules pertaining to a claim for a broker's or salesman's real estate commission; and (2) their relevance on an application for the present remedy. These two problems will be considered in sequence.

## II

It is the general rule in Connecticut that a broker or salesman is entitled to a commission when he has procured a customer ready, willing and able to purchase upon the terms prescribed or accepted by the vendor. *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 465; *Menard* v. *Coronet Motel, Inc.,* 152 Conn. 710, 711. In other words, the broker must be the predominating producing cause of the sale. *Brotherhood* v. *Miceli,* 152 Conn. 715, 716. Whether the broker's efforts were the predominating producing cause is a question of fact for the trier. *Marshall* v. *Sturgess & Jockmus, Inc.,* 150 Conn. 59, 62.

From the limited evidence offered at the hearing on the application for the remedy, it could reasonably be concluded that the plaintiff did produce the Polcyns as customers who were ready, willing and able to purchase the unimproved lot, and to contract for a home to be erected thereon by Home-

stead. Their offer to this effect, for a total price not to exceed $80,000, was communicated by the plaintiff to his employer, Mrs. Miller, in her capacity as president of Homestead.

As has been seen, Homestead finally made an agreement to sell the lot and home for the price of $79,052. This was a figure slightly below the original offer, obtained by the plaintiff, in the sum of $80,000.

The hard fact is that Mrs. Miller subsequently prohibited or discouraged the plaintiff from working out the remaining details of the sale, and insisted on negotiating directly with the Polcyns. Such conduct by the defendants, acting through Mrs. Miller, in and of itself could not defeat the plaintiff's right to the agreed commission. *Fisher* v. *Hanson,* 99 Conn. 703, 707; *Metz* v. *Hvass Construction Co.,* 144 Conn. 535, 537; *Benrus Watch Co.* v. *Rosengarten,* 138 Conn. 393, 396.

If the defendants' contention were valid, it would mean that many real estate salesmen, after having exerted substantial and bona fide efforts to locate a buyer, could be deprived of their commission, upon being ordered by their employer to cease and desist from any further contacts with the purchaser, so that the final closing could be handled by the employer. The law is to the contrary.

### III

The contents of part II, above, persuade the court that the plaintiff's application should be granted, in the light of the limited proof necessary when a remedy is sought, under Public Acts 1973, No. 73-431 (as amended, General Statutes §§ 52-278a to 52-278g).

The sole issue herein is whether the plaintiff has proven "probable cause," under § 4 of Public Act

73-431, to sustain the validity of his claim. Public Act 73-431 does not attempt to define "probable cause." The research of counsel and the court has not revealed any reported decisions under this statute, which became effective May 30, 1973.

It is clear, however, that the quantum of proof required for "probable cause," under Public Act 73-431, is less than that imposed on a plaintiff in order to establish his case for a final judgment. Proof of "probable cause," as a condition of obtaining a prejudgment remedy, is not as demanding as proof by a fair preponderance of the evidence.

Thus, in *Wall* v. *Toomey,* 52 Conn. 35, 36, the court stated: "The legal idea of probable cause is a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it."

Probable cause has also been defined as the knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for prosecuting an action. *Paranto* v. *Ball,* 132 Conn. 568, 571; *McGann* v. *Allen,* 105 Conn. 177, 186; *Zitkov* v. *Zaleski,* 102 Conn. 439, 444. The determination as to probable cause, in civil cases, is to be reached by an application of the factual and practical considerations of everyday life on which reasonable and prudent men act. See *State* v. *Wilson,* 153 Conn. 39, 41.

The plaintiff, on the basis of Public Act 73-431 and the limited evidence offered at the instant hearing, has satisfied the court that probable cause exists for the granting of his application.

It is significant, in this connection, that the defendants, although represented by counsel, saw fit not to offer any evidence, or witnesses, in opposi-

tion to the plaintiff's petition. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674; *Queen* v. *Gagliola,* 162 Conn. 164, 168.

## IV

The plaintiff's application for a prejudgment remedy, by way of attachment of real estate, to the extent of $5000 is granted. The plaintiff's counsel shall prepare an appropriate order for signature of the court.