ROBERT PINEAU *v.* HOME DEPOT, INC.
(AC 14900)

Dupont, C. J., and Lavery and Downey, Js.

Argued March 5—officially released May 20, 1997

*Max F. Brunswick*, for the appellant (plaintiff).

*Frederick J. Trotta, Sr.*, with whom, on the brief, was *Cynthia K. Sammarco*, for the appellee (defendant).

*Opinion*

DUPONT, C. J. The plaintiff appeals from the judgment rendered following a jury's verdict for the defendant. We affirm the judgment of the trial court.

The relevant facts are those that follow. The plaintiff alleged in his complaint that on December 3, 1990, at approximately 8:45 p.m., he was shopping with a friend at the Home Depot in North Haven and was struck

on his knee by a box of tiles that fell from a shelf approximately fourteen feet high, causing permanent and disabling injuries. The plaintiff's cause of action is in negligence and alleges that the defendant's employees, who were stocking shelves with a forklift in the adjacent aisle, negligently caused the box to fall on the plaintiff who was on the other side of the shelves.[1]

Several witnesses in addition to the plaintiff testified at trial. The witnesses were Edward Wilczynski and Antone Grimshaw, the Home Depot employees who were working in the aisle adjacent to the one in which the plaintiff was standing, John Leary, the plaintiff's friend who was with him in the aisle when the box fell, Harold Tabrys, the Home Depot manager who was on duty on the evening of the incident, and Herbert Hermele, an orthopedic surgeon who treated the plaintiff.[2]

The plaintiff raises four issues on appeal. He claims that the trial court improperly (1) denied a motion in

---

[1] Specifically, the plaintiff's complaint alleged in relevant part: "Said incident was caused by the carelessness and negligence of the defendant in one or more of the following respects: (a) it failed to keep its store reasonably safe for patrons from the danger of falling objects being stocked by its employees on shelves at least 14 feet above the floor; (b) it failed to warn patrons by means of barriers or otherwise, to keep away from areas in which such high shelves were being stocked with heavy merchandise; (c) it constructed and maintained said shelves in a dangerous condition, when it knew or in the exercise of due care should have known that stocking shelves with heavy merchandise at such heights was incompetent, inappropriate, unsafe and dangerous, while said store was open to patrons and members of the public; (d) it knew or in the exercise of due care should have known that such conditions in said store were likely to cause injuries to persons lawfully using said premises; (e) its employees failed to warn the plaintiff of said defective and dangerous condition; (f) it knew or should have known that one person on a fork-lift was inadequate to load 50-pound boxes onto a shelf approximately 14 feet above the floor, where patrons were walking underneath; and (g) it failed to use reasonable care to keep said premises safe for persons lawfully using the same."

[2] Grimshaw's and Tabrys' testimonies were read aloud in deposition question and answer format because they were both unavailable at the time of trial.

limine, (2) admitted into evidence a letter of a physician who did not testify, (3) refused to charge the jury on the doctrine of res ipsa loquitur, and (4) denied a postverdict motion in arrest of judgment and for new trial without an evidentiary hearing to determine whether experiments were done by the jury in the deliberation room.[3]

## I

The plaintiff's first claim is that the trial court improperly denied his motion in limine and allowed evidence to be introduced of his prior arrest for forgery in 1984. The plaintiff claims that the introduction of this evidence prejudiced him, because it raised questions about his credibility. At trial, however, it was the plaintiff, not the defendant, who brought out the forgery incident.[4]

---

[3] The plaintiff also filed a motion to set aside the verdict, which was denied. He then filed a motion for review of the denial. This court granted review and relief. The trial court subsequently articulated the reasons for its decision.

[4] The colloquy was as follows:

"[Plaintiff's Counsel]: [W]as there a time when you had some kind of difficulty with the law?

"The Plaintiff: Yes, there was.

"[Plaintiff's Counsel]: And when did that occur?

"The Plaintiff: In—I believe it was in 1984.

"[Plaintiff's Counsel]: Okay. And did that have something to do with a driver's license?

"The Plaintiff: Yes, it did.

"[Plaintiff's Counsel]: Okay, and were you charged with something at that time?

"The Plaintiff: Yes I was.

"[Plaintiff's Counsel]: Did that have to do with altering or tampering with a driver's license?

"The Plaintiff: Yes, it did.

"[Plaintiff's Counsel]: And did you do that?

"The Plaintiff: Yes, I did."

The direct examination continued and related to the specifics of the charge. Defendant's counsel made a relevancy objection when the plaintiff was asked about the disposition of the charge. The trial court sustained the objection. Direct examination then turned to the plaintiff's deposition testimony concerning the incident.

"[Plaintiff's Counsel]: "Do you remember being deposed or giving a deposition on April 3, 1992, in this case?

Because the plaintiff introduced the forgery evidence himself, we decline to review his claim. This court need not review a party's objection to evidence that he introduced himself. See *Rudewicz* v. *Rudewicz*, 3 Conn. App. 704, 706, 491 A.2d 1123, cert. denied, 196 Conn. 813, 494 A.2d 907 (1985). "A party may not secure a reversal on the basis of any invited error." *E. Udolf, Inc.* v. *Aetna Casualty & Surety Co.*, 214 Conn. 741, 752, 573 A.2d 1211 (1990).

## II

The plaintiff's second claim is that the trial court improperly admitted into evidence a letter of a physician who did not testify. The plaintiff claims that the letter was hearsay because the physician was not a treating physician, and that its introduction prejudiced him unfairly. Some additional facts are necessary for our resolution of this claim.

Hermele testified for the plaintiff and opined that the blow caused by the impact of the tile box had permanently damaged the plaintiff's knee. Hermele testified that he referred the plaintiff to another physician, Peter Jokl, for a second opinion, particularly regarding innovative surgical procedures. Jokl submitted a report to Hermele. Hermele testified that he did not incorporate

---

"The Plaintiff: Yes, I do.

"[Plaintiff's Counsel]: With Mr. Trotta?

"The Plaintiff: Yes.

"[Plaintiff's Counsel]: And do you remember him asking you a question, were you ever arrested for a felony?

"The Plaintiff: Yes.

"[Plaintiff's Counsel]: And what was your answer to that question?

"The Plaintiff: No.

"[Plaintiff's Counsel]: Did you know—Did you ever know that the charge of altering a driver's license was a felony?

"The Plaintiff: At that time, I did not.

"[Plaintiff's Counsel]: Did you know when you got arrested that it was a felony?

"The Plaintiff: No, I did not."

Jokl's findings into his report because they were identical with his own. On cross-examination of Hermele, defense counsel introduced, under the business entry exception to the hearsay rule, a cover letter written by Jokl to Hermele that accompanied Jokl's report.[5]

The plaintiff's counsel objected on the grounds that the letter was hearsay and did not fall within the business entry exception. The trial court overruled the objection, stating that Hermele's practice of putting cover letters in patients' files with the corresponding reports makes the letters business entries.

The admissibility of reports made by expert witnesses is governed by General Statutes § 52-174 (b).[6] The plaintiff claims that Jokl was not a treating physician, and so his letter cannot be introduced into evidence as a business entry under the statute. We are unpersuaded. Hermele referred the plaintiff to Jokl as part of the plaintiff's treatment, and for the specific purpose of determining whether he needed surgery. Specialists to whom patients are referred by primary physicians are

---

[5] The text of the letter reads: "Please find a copy of my note on Robert Pineau. I think all in all honesty, at this stage, I would not go forward with any operative procedures such as a Maquet at this time. I think further conservative treatment would be well indicated and probably resolution of his legal problems may also contribute to successful outcome of this problem."

[6] General Statutes § 52-174 (b) provides in relevant part: "In all actions for the recovery of damages for personal injuries . . . any party offering in evidence a signed report and bill for treatment of any treating physician . . . may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician . . . and that the report and bill were made in the ordinary course of business. . . ."

We recognize that only Jokl's letter, and not his report, was introduced into evidence. After defense counsel sought to introduce the letter, the plaintiff's counsel voir dired Hermele on the letter. Hermele testified that the letter was not part of the report, and that Jokl's report contained findings identical to his. The plaintiff did not attempt to introduce Jokl's report into evidence. We conclude that, under the circumstances of this case, the letter falls within § 52-174 (b).

treating physicians for the purposes of the business entry rule in § 52-174 (b). See *Cronin* v. *Blaisdell,* 12 Conn. App. 632, 635, 533 A.2d 884 (1987).

We are also unconvinced that the introduction of the letter, without the testimony of Jokl, caused the plaintiff undue prejudice. The plaintiff argues that the letter implied to the jury that the plaintiff fabricated his injuries. The plaintiff had the opportunity to subpoena Jokl, but he did not. We agree with the trial court's articulation that the plaintiff could not have been prejudiced by the introduction of the letter because the letter concerned damages and the jury did not reach that issue because it found that the defendant was not liable for any injury sustained by the plaintiff. In addition, the transcript indicates that on both cross and redirect examination, Hermele testified that he did not believe that Jokl suspected the plaintiff of faking his injuries and that, in fact, he was certain that Jokl's opinion was that the stress of the litigation was contributing to the plaintiff's injuries. We conclude that the plaintiff's claims as to the introduction of the letter must fail.

### III

We next address the plaintiff's claim that the trial court improperly refused to charge the jury on the doctrine of res ipsa loquitur. Certain additional facts are necessary for a discussion of this claim.

On direct examination by the plaintiff's counsel, the defendant's employee Wilczynski testified that he and another employee, Grimshaw, were using a forklift in the aisle adjacent to the one in which the plaintiff was standing. Wilczynski testified that on the evening of the incident, they were raising pallets of tiles from the floor to the high shelves. Wilczynski did not check the shelf to see if there were any boxes already on the shelf before he started loading. During the process of moving tiles, he and Grimshaw heard a box fall over the edge

of the shelf. After they heard the noise, they ran around to the next aisle to see what had happened. Wilczynski spoke to the plaintiff and then called the manager, Tabrys. Wilczynski testified on redirect examination that this was not the first time that merchandise had fallen off shelves while Home Depot employees were using the forklift. He also testified that customers cannot reach the high shelves because the only ladders in the store's aisles are about one and one-half feet high.

In his deposition testimony, Grimshaw stated that, at the time of the incident, he was using the forklift to remove boxes of tiles from the shelf. He heard the box fall at the same time that he was unloading a box on his side of the aisle. Grimshaw also stated that the ordinary time to load and unload shelves is early in the morning and late in the evening, and that at the time the plaintiff was in the adjacent aisle, the store was open to the public. He testified that Wilczynski was "spotting" him from the ground to be sure no one was in the aisle in the way of the forklift, but no one was standing guard in the adjacent aisle.

Tabrys, the store manager on duty on the evening of the incident, testified that Wilczynski had notified him that the forklift had nudged the rack and had caused a box of tiles to fall.

During closing argument, the plaintiff's counsel alleged "clear cut negligence." He argued: "[T]he evidence is clear from two or three employees that the box, or boxes, were knocked over into the next aisle. The evidence is clear from two of the three employees that the box or boxes fell in the aisle and that Mr. Pineau was struck in the left leg and that it hurt him."

The leading case in Connecticut on the doctrine of res ipsa loquitur is *Giles* v. *New Haven*, 228 Conn. 441,

636 A.2d 1335 (1994).[7] The *Giles* court articulated the test for res ipsa loquitur as follows. "The doctrine of res ipsa loquitur applies when three conditions are satisfied: (1) [t]he situation, condition, or apparatus causing the injury must be such that in the ordinary course of events no injury would result unless from a careless construction, inspection, or user . . . (2) [b]oth inspection and user must have been at the time of the injury in the control of the party charged with neglect . . . (3) [t]he injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. . . ." (Citations omitted; internal quotation marks omitted.) Id., 446.

The plaintiff in *Giles* was injured while operating an elevator. A compensation chain became hooked onto a rail bracket located on the wall of the elevator shaft, causing the chain to disconnect from the bolts securing it to the underside of the elevator's cab. As a result, the chain fell to the bottom of the elevator shaft with a loud crash. The plaintiff directed the elevator to the nearest floor and jumped from the cab, sustaining injuries.

At the *Giles* trial, a maintenance supervisor for the defendant testified that the elevator had been installed by the defendant approximately sixty-one years before, that the building owner had a longstanding contract with the defendant for maintenance of the elevator, that the compensation chain hooking onto the rail bracket was the cause of the incident, and that the elevators were regularly inspected by defendant but that the compensation chain was not regularly included in the inspection.

The plaintiff's complaint in *Giles* alleged that the defendant had been negligent in its failure to inspect,

---

[7] At the time of publication, a more recent case on the doctrine was pending in our Supreme Court, *Barretta* v. *Otis Elevator Co.*, 41 Conn. App. 856, 677 A.2d 979, cert. granted, 239 Conn. 909, 682 A.2d 997 (1996).

maintain, and repair the compensation chain. She presented no direct evidence of negligence, however, and relied on the doctrine of res ipsa loquitur to infer negligence.

The *Giles* court found that the three conditions for res ipsa loquitur had been met. It noted that res ipsa loquitur is appropriate when the plaintiff does not submit direct evidence, but instead asks the jury to infer negligence from circumstantial evidence. "[T]he doctrine of res ipsa loquitur . . . when properly invoked, allows the jury to infer negligence based on the circumstances of the incident even though no direct evidence has been introduced." Id.

*Giles* is distinguishable from the present case because, here, the plaintiff introduced direct evidence of the defendant's negligence. Res ipsa loquitur instructions are appropriate when a plaintiff cannot prove with direct evidence the proximate cause of an injury, and has shown that the only reasonable explanation for the incident is that the injury must be attributable to the defendant's negligence. "A res ipsa loquitur case is ordinarily merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it." 2 Restatement (Second), Torts § 328D, comment b.[8]

---

[8] The Restatement (Second) of Torts describes the appropriate conditions for res ipsa loquitur.

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

"(a) the event is a kind which ordinarily does not occur in the absence of negligence;

"(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

"(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

"(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

"(3) It is the function of the jury to determine whether the inference is

"Where there is evidence of specific negligence on the part of the defendant which would support a finding by the jury that such negligence was a proximate cause of the plaintiff's injury, the jury should not be instructed on the doctrine of res ipsa loquitur." *Queen* v. *Gagliola,* 162 Conn. 164, 170, 292 A.2d 890 (1972). We conclude that a res ipsa loquitur instruction is not appropriate where the plaintiff is not relying solely on circumstantial evidence, but instead alleges and introduces into evidence specific acts of negligence by the defendant.

This is consistent with our holding in *Barretta* v. *Otis Elevator Co.,* 41 Conn. App. 856, 677 A.2d 979, cert. granted, 239 Conn. 909, 682 A.2d 997 (1996), where we concluded that the trial court should have instructed on res ipsa loquitur when the plaintiff presented no direct evidence of the defendant's negligence.

The plaintiff in *Barretta* brought suit in strict liability and negligence when the escalator she was riding at Milford Jai Alai came to a sudden halt and she fell, sustaining injuries. Her complaint alleged negligent design, manufacture, installation, maintenance, and repair of the escalator in that the defendant failed to inspect it or warn of defects. At trial, there was no evidence offered on what caused the accident. The plaintiff's expert testified that the cause of the plaintiff's fall was "unfound and untraceable." The plaintiff's other witnesses testified only about the nature and extent of her injuries. We held that the plaintiff's case met the *Giles* three-prong test, and that a res ipsa loquitur instruction was appropriate.

The case before us is similar to *Queen* v. *Gagliola,* supra, 162 Conn. 164, where the plaintiff was not entitled to a res ipsa loquitur instruction because she alleged and introduced specific acts of negligence by

to be drawn in any case where different conclusions may reasonably be reached." 2 Restatement (Second), Torts § 328D (1965).

the defendant. The plaintiff in *Queen* suffered a burned scalp and balding after the defendant gave her a permanent wave. Evidence of negligence was that a beauty school student administered the permanent without adequate supervision and that the manufacturer's instructions for the use of the permanent wave solution were not followed. The court stated that "we believe it is essential to observe that the case should not have been submitted to the jury on the doctrine of res ipsa loquitur." Id., 169. The specific acts of negligence presented by the plaintiff in *Queen* made res ipsa loquitur inappropriate. Id., 170.

Similarly, the plaintiff in this case presented specific acts of negligence by the defendant that eliminate the right to receive a res ipsa loquitur instruction. Three witnesses acknowledged that the employees' action of stocking the shelves with the forklift caused the box of tiles to fall onto the plaintiff's side of the aisle. These witnesses, if the jury believed them, indicated that (1) the forklift struck the steel rack that the tiles boxes were resting on, (2) the employees loading the shelves failed to check if boxes were on the shelves before they started manipulating other boxes, (3) the shelves were being stocked while patrons were in the store, contrary to the normal policy, and (4) the employees did not yell any warning to customers once they realized a box was falling. Because neither the plaintiff's pleadings nor his proof are consistent with a res ipsa loquitur theory, we conclude that the trial court properly denied his request for a res ipsa loquitur instruction.

## IV

The plaintiff's final claim is that the trial court improperly denied his motion for arrest of judgment and for an evidentiary hearing. The plaintiff claims that he should have been granted an evidentiary hearing to discover more information about what he believed to be

improper experiments conducted by the jury. We disagree.

At trial, a box of tiles of the same type and weight as the box that allegedly fell on the plaintiff's knee was introduced into evidence without objection.[9] At some point during the deliberations, a sheriff mentioned to the plaintiff's counsel that he heard noises coming from the jury room. The plaintiff's counsel did not make any objection. Only after the defendant's verdict was rendered did the plaintiff's counsel make motions in arrest of judgment and for evidentiary hearing arguing that the noise could possibly be the result of an improper experiment.

The plaintiff is precluded from making this claim because he did not object as soon as the sheriff alerted him to the noise. "We do not allow parties to await the outcome of a matter before deciding whether to make an objection but require parties to raise the objection, if possible, when there is still an opportunity for the court to correct the proposed error." *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 57 n.10, 634 A.2d 870 (1993).

The plaintiff's claim is substantively flawed as well. The plaintiff has cited many cases that hold that the use of extraneous evidence by jurors requires, by necessity, an evidentiary hearing. All of these cases concern items brought into the jury room that were not admitted into evidence or ex parte communications. Indeed, in cases where there is suspicion of such juror misconduct, an evidentiary hearing to investigate the matter is required. See generally *State* v. *Brown*, 232 Conn. 431, 656 A.2d 997 (1995). None of these circumstances is present here. The tile box was not extraneous evidence; it was admitted at trial and properly taken to

---

[9] The box introduced into evidence was similar to the box that fell on the evening of the incident. It was not the box that fell.

the jury room. We conclude that the trial court was correct in denying the motion for arrest of judgment and for an evidentiary hearing.

The judgment is affirmed.

In this opinion the other judges concurred.

