******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NATHANIEL SUTERA *v.* DEBORAH NATIELLO ET AL.
(AC 40749)

Lavine, Bright and Pellegrino, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, N and T, for negligence in connection with personal injuries he suffered when, while conducting repairs on a building owned by N, he fell from scaffolding erected on the side of the building. The plaintiff filed a four count complaint wherein he alleged two counts of common-law negligence and separately pleaded two counts pursuant to the doctrine of res ipsa loquitur. In their answers, the defendants denied that they were negligent and, as a special defense, alleged that the plaintiff's own negligence was the proximate cause of his injuries. At trial, the plaintiff requested that the court charge the jury on the theory of res ipsa loquitur, and, over the defendants' objection, the court instructed the jury on that theory. The court also submitted to the jury a single verdict form and a set of interrogatories that did not request separate verdicts as to each count of the complaint. Thereafter, the jury returned a general verdict in favor of the plaintiff, and also found the plaintiff to be 50 percent contributorily negligent. Subsequently, the defendants filed a motion to set aside the verdict or for remittitur, arguing that the res ipsa loquitur charge was improper and that the jury's verdict had been improperly swayed by its sympathy for the plaintiff. The trial court denied the defendants' motion to set aside the verdict or for remittitur, and the defendants appealed to this court. *Held*:

1. The general verdict rule precluded review of the defendants' claim that the trial court committed harmful error by instructing the jury on the doctrine of res ipsa loquitur; the defendants' claim that the general verdict rule should not apply because interrogatories were submitted to the jury was unavailing, as the defendants failed to provide interrogatories to the jury that disclosed the grounds for its decision and, thus, the fact that interrogatories were submitted to the jury, by itself, was insufficient to preclude application of the rule, and given that the plaintiff's complaint alleged separate counts under premises liability and res ipsa loquitur, that the defendants subsequently denied each of those counts in their answer, that the jury returned a general verdict for the plaintiff, and that the error claimed on appeal implicated only one of the possible routes the jury could have taken in reaching its verdict, the general verdict rule applied.

2. The trial court did not abuse its discretion in denying the defendants' motion to set aside the verdict or for remittitur; the defendants failed to identify anything in the record to support their claim that the jury was influenced by sympathy for the plaintiff, who is a paraplegic as a result of the injuries he sustained, and the fact that the jury found the plaintiff partially responsible for his injuries suggested that it was not swayed by sympathy and that it did not return a compromise verdict.

Argued January 8–officially released May 7, 2019

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New London and tried to a jury before *Bates, J.*; verdict for the plaintiff; thereafter, the court denied the defendants' motion to set aside the verdict or for remittitur and rendered judgment for the plaintiff, from which the defendants appealed to this court. *Affirmed.*

*Cassie N. Jameson,* with whom, on the brief, was

*David S. Williams*, for the appellants (defendants).

   *Dana M. Hrelic*, with whom were *Brendon P. Levesque* and, on the brief, *Christopher J. Murray*, for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. This appeal arises from a substantial monetary judgment in favor of the plaintiff, Nathanial Sutera, who sustained serious injuries when he fell from scaffolding erected on the side of a three story building owned by the defendant Deborah Natiello. The defendants, Natiello and Timothy Sutera (Timothy S.),[1] appeal following the trial court's denial of their motion to set aside the verdict or for remittitur. On appeal, the defendants claim that (1) the trial court committed harmful error by giving a jury instruction on the doctrine of res ipsa loquitur, and (2) the jury verdict was improperly influenced by sympathy for the plaintiff. We conclude that the first claim is unreviewable and the second claim is without merit. We, therefore, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the summer of 2012, the plaintiff agreed to assist Timothy S. in repairing the soffit on the building. Timothy S. supplied the majority of the equipment, including the scaffolding and ladders, needed to make the repairs. Timothy S. repaired the soffit while standing on the scaffolding using materials that the plaintiff had prepared at ground level. At the time of the accident, Timothy S. and the plaintiff had been working on the project for approximately three weeks. The day before the accident, they moved the scaffolding and ladders to the opposite side of the building, but due to the lateness of the hour, they decided to stop working and continue the following day.

Timothy S. and the plaintiff agreed to begin work at approximately 12 p.m. on September 24, 2012, the day of the accident. The plaintiff arrived at the property at the agreed upon time, but Timothy S. was delayed. At approximately 2 p.m., the plaintiff went to lunch because Timothy S. still had not arrived. During his lunch break, the plaintiff consumed one twenty-four ounce beer with his meal. When he finished his meal, he returned to the property and observed that Timothy S. still was not present. The plaintiff elected to climb the ladder to access the scaffolding and examine the soffit that they would be repairing next. While the plaintiff was on the scaffolding, it gave way, and he and the scaffolding fell to the ground. A tenant who heard the crash found the plaintiff lying on the ground. He was taken to the hospital where he was treated for his injuries. A blood test taken at the hospital revealed that his blood alcohol content was between 0.07 and 0.10 percent. As a result of the fall and injuries he sustained, the plaintiff is a paraplegic.

On October 14, 2014, the plaintiff served a four count complaint on the defendants. The first two counts set forth specific allegations of negligence, as to each defendant, regarding how the scaffolding was erected

and secured on the premises, and how the defendants failed to train, warn, and supervise the plaintiff regarding use of the scaffolding. The third and fourth counts alleged negligence, again as to each defendant, under the doctrine of res ipsa loquitur. The defendants pleaded a number of special defenses alleging, inter alia, that the plaintiff's own actions were the proximate cause of his injuries and that he failed to exercise proper care when using the scaffolding. During a six day jury trial, the plaintiff and Timothy S. testified that they were uncertain whether the scaffolding was attached securely to the building on the day of the accident. The plaintiff's expert witness, however, testified that, on the basis of a reasonable degree of professional certainty, the scaffolding was not secured at the time of the accident.[2] The expert further testified that he did not "know every single component, exactly at what point [the scaffolding] started to tilt or started to fail, but . . . one way or the other . . . [the scaffolding] was not erected properly or we [would not] be here today."

Before the conclusion of evidence, the plaintiff's counsel requested that the court charge the jury on the theory of res ipsa loquitur in addition to premises liability, stating: "[T]here's testimony from the defendant that he set up the scaffolding and [the plaintiff's] involvement in the setup was relatively minor in that he only brought over pieces of the components and [roped] them up to the defendant, who after receiving the components, put it together. . . . [R]egardless of [the plaintiff's] use of the scaffolding, that's not the cause of why it collapsed. The reason why it collapsed was because it was not secured to the house, so there is sufficient evidence for a res ipsa [loquitur] charge to go to the jury."

The defendants objected to this charge, arguing that an instruction on res ipsa loquitur was inappropriate given the evidence presented at trial. Specifically, they contended that because the plaintiff's expert testified with respect to the cause of the collapse, there was direct evidence of the defendants' negligence presented to the jury sufficient to preclude an instruction on res ipsa loquitur. Despite the defendants' objection, the court included an instruction on the doctrine of res ipsa loquitur, which provided: "[I]n certain circumstances, the very happening of an accident may be an indication of negligence. We have the doctrine called res ipsa loquitur which, in Latin, means the thing speaks for itself. It is a doctrine that infers negligence from the very nature of the injury in the absence of direct evidence in how the defendants behaved. . . . [The] [p]laintiff's voluntary act or neglect contributing to the occurrence, [however], prevents the inference from being drawn."[3] (Emphasis added.) After the court instructed the jury, the jury was given a single verdict form and a set of interrogatories that did not request separate verdicts as to each count.[4] The jury returned

the following verdict: "[T]he jury finds the issues for the plaintiff, Nathaniel Sutera, as against the defendants, Deborah Natiello and Timothy [S.] . . . . *Comparative fault*. . . . The plaintiff, Nathaniel Sutera, 50 percent; the defendants, Deborah Natiello and Timothy [S.], 50 percent."[5] (Emphasis added.)

After the jury returned the verdict, the defendants filed a motion to set aside the verdict or for remittitur, claiming that the res ipsa loquitur charge was improper because, among other things, direct evidence of the defendants' negligence had been presented at trial. The defendants further argued that the verdict was improperly swayed by sympathy for the plaintiff, resulting in a compromise verdict. The court denied the defendants' motion. This appeal followed. Additional facts and procedural history will be set forth as necessary.

## I

On appeal, the defendants first claim that the giving of the jury instruction on the doctrine of res ipsa loquitur constitutes harmful error. Specifically, they argue that, among other things, because there was direct evidence of the defendants' negligence presented at trial, the court erred in concluding that the doctrine applied.[6] Moreover, the defendants argue that the instruction on the doctrine of res ipsa loquitur was harmful because it likely misled the jury as to the burden of proof and, at a minimum, must have confused the jury.[7] In response, the plaintiff argues that review of the defendants' claim is barred by the general verdict rule. Specifically, the plaintiff claims that, because the defendants assented to a general verdict form and did not request specific interrogatories with respect to each count, the general verdict rule applies. Under the unique facts of this case, where res ipsa loquitur was pleaded as a separate cause of action, without objection from the defendants, and separate jury interrogatories asking the jury to set forth the basis of its verdict were not provided to the jury, we conclude that the general verdict rule applies and, therefore, the defendants' claim of instructional error is unpreserved and not reviewable.

The following facts and procedural history are relevant to our resolution of the claim. In opposing the defendants' motion to set aside the verdict or for remittitur, the plaintiff argued that the res ipsa loquitur instruction was proper given the underlying facts of the case and, additionally, that review of the defendants' claim was barred by the general verdict rule. In its memorandum of decision, the court agreed with the plaintiff and explained that the case law in which the application of the doctrine was deemed improper addressed circumstances where the factual basis for negligence was clear, whereas, in the present case, there were no independent witnesses and the plaintiff had little memory of the event. The court also agreed that, despite any error with respect to the res ipsa loquitur charge, the

jury's verdict could be upheld under the proper and unchallenged premises liability theory of recovery. The court stated: "The defendants do not challenge the propriety of the [verdict on the] negligence counts, just the res ipsa [loquitur] counts. Even if the res ipsa [loquitur] counts should have been [stricken] . . . the verdict should be sustained under the general verdict rule."

"The general verdict rule operates to prevent an appellate court from disturbing a verdict that may have been reached under a cloud of error, but is nonetheless valid because the jury may have taken an untainted route in reaching its verdict." (Internal quotation marks omitted.) *Green* v. *H.N.S. Management Co.*, 91 Conn. App. 751, 754, 881 A.2d 1072 (2005), cert. denied, 277 Conn. 909, 894 A.2d 990 (2006). "[A]pplication of the rule [is limited] to the following scenarios: (1) *denial of separate counts of a complaint*; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." (Emphasis added.) *Curry* v. *Burns*, 225 Conn. 782, 801, 626 A.2d 719 (1993). "A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. Alternatively, if the action is in separate counts, a party may seek separate verdicts on each of the counts." Id., 786.

In response to the plaintiff's claim that the general verdict rule bars review of their claim on appeal, the defendants essentially argue that the general verdict rule should not apply because interrogatories were, in fact, submitted to the jury, which precludes application of the rule. As this court noted in *Perez* v. *Cumba*, 138 Conn. App. 351, 363, 51 A.3d 1156, cert. denied, 307 Conn. 935, 56 A.3d 712 (2012), however, "[i]t is not the mere submission of interrogatories that enables us to make that determination; rather, it is the submission of properly framed interrogatories that discloses the grounds for the jury's decision. . . . [T]he efficacy of the interrogatories and the preclusion of the general verdict rule [therefore] depends on their being framed in such a way that this court is able to determine the grounds for the jury's decision." (Emphasis omitted; internal quotation marks omitted.) Id., quoting *Fabrizio* v. *Glaser*, 38 Conn. App. 458, 463, 661 A.2d 126 (1995), aff'd, 237 Conn. 25, 675 A.2d 844 (1996). Despite the defendants' claim that application of the rule is inappropriate under the present circumstances, it is not in dispute that the defendants failed to provide interrogatories to the jury that disclosed the grounds for its decision.[8] Accordingly, the fact that interrogatories were submitted to the jury, by itself, is insufficient to preclude the application of the rule.

Next, the defendants claim that, because the doctrine of res ipsa loquitur is not a separate cause of action, the general verdict rule should not apply, despite the fact that the plaintiff pleaded it in separate counts. The following legal principles are relevant to the resolution of the defendants' claim. In *Curry* v. *Burns*, our Supreme Court "reconsidered the applicability of the general verdict rule in an endeavor to make it more certain 'as to when it applies and when it does not.' " *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 275 n.16, 698 A.2d 838 (1997), quoting *Curry* v. *Burns*, supra, 225 Conn. 800. In doing so, the court articulated five distinct scenarios wherein the rule would apply. The first of those five scenarios is *the denial of separate counts of a complaint.* In the present case, it is undisputed that the plaintiff's complaint alleged separate counts under premises liability and res ipsa loquitur, and that the defendants subsequently denied each of those counts in their answer. The defendants' claim, therefore, falls squarely within the first scenario contemplated by *Curry*.[9] Given that the jury returned a general verdict for the plaintiff and the error claimed on appeal implicates only one of the possible routes the jury could have taken in reaching its verdict, we conclude, for the aforementioned reasons, that the general verdict rule applies here and, thus, prevents us from reviewing the defendants' claim.[10]

II

The defendant next claims that the jury improperly was influenced by sympathy for the plaintiff given the nature of his injury, as evidenced by its verdict and the resulting award. Specifically, the defendants argue that the jury's finding of comparative negligence is indicative of a compromise verdict. We disagree.

"When reviewing both a motion to set aside the verdict and a motion for remittitur, the trial judge must review the evidence from the viewpoint of sustaining the verdict." *Levine* v. *418 Meadow Street Associates, LLC*, 163 Conn. App. 701, 712, 137 A.3d 88 (2016). "In determining whether to order remittitur, the trial court is required to review the evidence in the light most favorable to sustaining the verdict. . . . Upon completing that review, the court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. . . . The ultimate test which must be applied . . . is whether . . . the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Munn* v. *Hotchkiss School*, 326 Conn. 540, 575–76, 165 A.3d 1167 (2017). We review a trial court's decision to grant or deny a motion to set aside a verdict as excessive as a matter of law under an abuse of discretion standard. Id., 574.

In the defendants' motion to set aside the verdict or for remittitur, they claimed that the jury "clearly found the plaintiff to be responsible for his accident, but instead of turning him away [they] made an award of virtually the full amount . . . argued by his attorney . . . . The jury was unable to do this. . . . [I]t is obvious that the jury chose the amount of damages it endeavored to award . . . and only then sought to find support for that award."

On appeal, the defendants do not direct our attention to any part of the record that supports their claim that the jury was influenced by sympathy for the plaintiff or that its verdict constitutes a compromise verdict, other than to note that the jury found the plaintiff comparatively negligent.[11] The defendants, however, do direct our attention to this court's decision in *Niles* v. *Evitts*, 16 Conn. App. 696, 548 A.2d 1352 (1988), in support of their claim. In *Niles*, this court addressed the nature of the remand in a case where "liability and damages [were] 'inextricably interwoven' "; id., 700; a legal issue materially distinct from the defendants' claim now presented on appeal. In the court's discussion of the issue, however, it made the following relevant observation: "[T]here is little fear that the jury was motivated by sympathy for one party *since it found both parties had been negligent.*" (Emphasis added.) Id. In spite of the defendants' general assertion that *Niles* supports their claim that the verdict was affected by improper considerations, *Niles* supports the proposition that when a jury finds a plaintiff comparatively negligent, it also can weigh against any suggestion that the jury was influenced by sympathy. We agree with the court's reasoning in *Niles* and conclude that the fact that the jury found the plaintiff partially responsible for his injuries suggests that the jury was *not* swayed by sympathy and that it did not return a compromise verdict. Consequently, we conclude that the court did not abuse its discretion when it denied the defendants' motion to set aside the verdict or for remittitur.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Timothy S. is Natiello's husband and the plaintiff's brother.

[2] The following exchange occurred between the plaintiff's counsel and the plaintiff's expert witness:

"[The Plaintiff's Counsel]: [B]ased on your involvement in this case, your experience as a safety consultant, and your review of the materials in this case, based on a reasonable degree of professional certainty, do you have an opinion as to why the scaffolding fell over?

"[The Witness]: Yes.

"[The Plaintiff's Counsel]: And what is your opinion?

"[The Witness]: Starting with the fact it wasn't secured, so it's not a matter of was it secured at the wrong level [or] in the wrong way. [It was] not secured to the building, number one."

[3] As we discuss more fully in footnote 10 of this opinion, the court's res ipsa loquitur charge did not conform to the law set forth by our Supreme Court in *Giles* v. *New Haven*, 228 Conn. 441, 455, 636 A.2d 1335 (1994).

[4] The first interrogatory listed on the verdict form, which in relevant part mirrored the proposed verdict form submitted by the defendant, provided

the following: "Did the plaintiff prove by a preponderance of the evidence that the defendants were negligent in any of the ways he alleged in his complaint?"

[5] The jury awarded the plaintiff $7,208,534.66, in economic and noneconomic damages, which the court reduced by 50 percent, resulting in a net award of $3,604,267.33.

[6] The defendants further argue that, because they did not have direct control of the scaffolding at the time of the accident, the res ipsa loquitur instruction was improper.

[7] The defendants suggest that the court's res ipsa loquitur instruction resulted in an improperly framed premises liability instruction, which compounded the harm created by the improper res ipsa loquitur charge. As the court identified in its memorandum of decision addressing the defendants' motion to set aside the verdict or for remittitur, the defendants were not challenging the legal sufficiency of the premises liability instruction. Moreover, our review of the record does not reveal any timely challenge to the court's premises liability charge. Because the defendants attempt to raise the issue for the first time on appeal as a predicate to their claim that the improper res ipsa loquitur instruction was harmful, we decline to consider it further. See *State* v. *Perez*, 87 Conn. App. 113, 118–19, 864 A.2d 52 (2005) (claim of instructional error on appeal must be one stated at trial).

[8] See footnote 4 of this opinion.

[9] Moreover, had the defendants wanted to avoid any possible ambiguity in the verdict, nothing prevented them from moving to strike the third and fourth count for failure to plead a separate cause of action. They also could have requested separate verdicts for each count or interrogatories asking the jury to explain the grounds for its verdict, as our Supreme Court advised in *Curry*. See *Curry* v. *Burns*, supra, 225 Conn. 786.

[10] Although we decline to review the defendants' claim of instructional error, clarification is needed as to the court's res ipsa loquitur instruction. "[T]he doctrine of res ipsa loquitur . . . when properly invoked, allows the jury to infer negligence based on the circumstances of the incident even though no direct evidence [of negligence] has been introduced. . . . Where there is evidence of specific negligence on the part of the defendant which would support a finding by the jury that such negligence was a proximate cause of the plaintiff's injury, [however], *the jury should not be instructed on the doctrine of res ipsa loquitur. . . .* [A] res ipsa loquitur instruction is not appropriate where the plaintiff is not relying solely on circumstantial evidence, but instead alleges and introduces into evidence specific acts of negligence by the defendant." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Pineau* v. *Home Depot, Inc.*, 45 Conn. App. 248, 257–58, 695 A.2d 14 (1997), appeal dismissed, 245 Conn. 422, 713 A.2d 825 (1998).

Moreover, Connecticut is a modified comparative negligence jurisdiction. See General Statutes § 52-572h. Our Supreme Court has held that comparative negligence does not preclude the application of res ipsa loquitur. "[W]henever a court can reasonably find that the event is one that ordinarily would not have occurred in the absence of someone's negligence, and that the defendant's inferred negligence was more probably than not a cause of the injury, the doctrine of res ipsa loquitur applies even though the plaintiff's negligence may also have contributed to the injury. If a trial court determines that the doctrine of res ipsa loquitur is applicable, it should thereafter instruct the jury to compare the negligence of the plaintiff, if any, with that of the defendant to decide what percentages to attribute to each party consistent with the comparative negligence statute." *Giles* v. *New Haven*, 228 Conn. 441, 455, 636 A.2d 1335 (1994).

[11] Connecticut is a modified comparative negligence jurisdiction. See footnote 10 of this opinion. The defendants' claim that a finding of comparative negligence is somehow indicative of a compromise verdict is without merit.